# In the United States Court of Federal Claims

No. 12-064C
Filed: May 31, 2013
**TO BE PUBLISHED**

*******************************************

| | |
|---|---|
| CREWZERS FIRE CREW TRANSPORT, INC., | Blanket Purchase Agreements; Contract Disputes Act, 41 U.S.C. §§ 601-13 (2006), *as amended and codified at* 41 U.S.C. §§ 7101-7109; |
| Plaintiff, | Federal Acquisition Regulations, 48 C.F.R. § 2.101 (definition of contracts); 48 C.F.R. § 2.201 (contract clause); |
| v. | 48 C.F.R. § 13.004 (effect of quotations); 48 C.F.R. § 13.303 (blanket purchase agreements); |
| THE UNITED STATES, | 48 C.F.R. § 52.212-4 (terminations for convenience); |
| Defendant | Motion to Dismiss, RCFC 12(b)(1), 12(b)(6); Tucker Act, 28 U.S.C. § 1491(a)(1). |

*******************************************

**Cyrus E. Phillips IV,** Albo & Oblon, L.L.P., Arlington, Virginia, Counsel for Plaintiff, Crewzers Fire Crew Transport, Inc.

**Shelley D. Weger,** Commercial Litigation Branch, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

## MEMORANDUM OPINION AND FINAL ORDER

**BRADEN,** *Judge.*

## I.    RELEVANT FACTUAL BACKGROUND.[1]

The United States Forest Service ("Forest Service") from time to time orders tents under Blanket Purchase Agreements ("BPA") to respond to "all-hazard incidents" and suppress wildfires in regional and nationwide wilderness areas.  Am. Compl. ¶ 6; Pl. Resp. App. at 000072.  These tents are made of flame retardant vinyl and are available in two sizes, Type 3 and Type 4.  Am. Compl. ¶¶ 1, 7.  Ordered tents are to be set up and taken down by the contractor within twelve hours before the fire crew's arrival at base camp and twelve hours after a resource order was released, in accordance with industry standards.  Pl. Resp. App. at 000072.

---

[1] The relevant facts discussed herein were derived from the February 3, 2012 Amended Complaint ("Am. Compl.") and an Appendix to Plaintiff's December 7, 2012 Response to the Government's November 7, 2012 Motion To Dismiss ("Pl. Resp. App.").

On April 11, 2011, the United States Department of Agriculture's United States Forest Service ("Forest Service") awarded a BPA to the plaintiff, Crewzers Fire Crew Transportation, Inc. ("Crewzers"). Am. Compl. ¶ 7.

Crewzers' April 11, 2011 BPA was awarded for a three-year term, and each order under the BPA is limited to a maximum of $150,000. Am. Compl. ¶ 7; Pl. Resp. App. at 000066, 000070 (BPA §§ B, C.3.1). The Forest Service does not guarantee that it will place orders under the BPA for tents, because of the sporadic nature of incidents. Pl. Resp. App. at 000066 (BPA § B). In addition, the tent ordered is furnished by the contractor to the extent the contractor is willing and able to perform at the time of the order. Pl. Resp. App. at 000070 (BPA § C.3.1). All resources are listed and ranked on a dispatch priority list ("DPL"). Pl. Resp. App. at 000074 (BPA § D.6.2). Each geographic zone has its own DPL. Pl. Resp. App. at 000074 (BPA § D.6.2). The Forest Service's contracting officer ranks tents, lowest evaluated price first, on the DPL. Am. Compl. ¶ 11; Pl. Resp. App. at 000117-139 (4/11/11 DPL). Resource orders for specific flame retardant vinyl tents are placed by ranked price in accordance with the DPL under specific procedures contained in an "Ordering Protocol for Resources" set out in the BPA. Pl. Resp. App. at 000073. For instance, the BPA provides that "if a Contractor cannot be reached or is not able to meet the time and date needed, the dispatcher may proceed with contacting the next resource on the dispatch priority list." Pl. Resp. App. at 000074 (BPA § D.6.5.1).

On November 8, 2011, the Forest Service's Contracting Officer ("CO"), sent a letter to Mr. Pilgrim Guinn, Director and President of Crewzers, indicating that she was terminating the April 11, 2011 BPA for convenience because of three occasions during the "2011 fire season in the Northern Rockies" when she believed Crewzers breached the BPA. Pl. Resp. App. at 000171-72.

Crewzers' first alleged breach occurred at the West Riverside Incident. Pl. Resp. App. at 000171. The tents provided by Crewzers did not include working swamp coolers, as required in § D.2.1.2.6 of the BPA, nor did the tents have adequate lighting, as required in § D.2.1.2.9 of the BPA. Pl. Resp. App. at 000171. In addition, Crewzers' initial repairs were inadequate. Pl. Resp. App. at 000171. The tents also did not display the company's name and unique identification number. Pl. Resp. App. at 000171.

Crewzers' second alleged breach occurred at the Granite Pass I Incident. Pl. Resp. App. at 000171. Crewzers did not arrive on the date and time the tents were needed, as required by § D.6.5.1 of the BPA. Pl. Resp. App. at 000171. The set-up and takedown of the tents did not meet the requirements of § D.2.1.2.13 of the BPA. Pl. Resp. App. at 000171. In addition, the swamp coolers and lights did not work, were missing, or were inadequate, and some tents did not satisfy the electrical requirement in § D.2.1.2.10 of the BPA. Pl. Resp. App. at 000171. The CO also was concerned because Mr. Guinn removed an original Government document from a Government documentation envelope and refused to return it. Pl. Resp. App. at 000171. On September 5, 2011, the CO called Ms. Shasta Guinn regarding the late arrival of the tents and the problems with the swamp coolers, lights, and electrical requirements. Pl. Resp. App. at 000172. The CO reminded Ms. Guinn that, by accepting an order, Crewzers committed to the date and time needed. Pl. Resp. App. at 000172. If Crewzers could not meet the date and time needed, it was required to decline the order. Pl. Resp. App. at 000172.

2

Crewzers' third alleged breach occurred at the Forty-One Complex Incident. Pl. Resp. App. at 000172. Crewzers attempted to set up larger tents than were ordered. Pl. Resp. App. at 000171. When confronted about the issue, Mr. Guinn allegedly became confrontational, rude, argumentative, and belligerent. Pl. Resp. App. at 000171-72. Based on these three alleged breaches, and because the November 8, 2011 letter was returned unclaimed, the CO electronically terminated the BPA for convenience on November 10, 2011, under Federal Acquisition Regulation ("FAR") 52.212-4. Pl. Resp. App. at 000183, 000247.

On November 22, 2011, Crewzers responded to the CO's November 10, 2011 termination notice, requesting that the Forest Service revoke the termination for convenience and appoint a new contracting officer. *See* Pl. Resp. App. at 000247-56. Crewzers argued that there was no reasonable basis for terminating Crewzers' BPA for convenience, since the Forest Service had a continuing need for tents. Pl. Resp. App. at 000248.

In addition, Crewzers stated that terminating the BPA for convenience deprived Crewzers of its contractual right to make reasonable price adjustments to its reserved spots on the DPL and afforded the Forest Service an opportunity to get better prices from the remaining contractors with BPAs. Pl. Resp. App. at 000250. For instance, under § C.3.1 of the BPA, Crewzers could have proposed reasonable price adjustments during an upcoming annual review, without forfeiting the ten dispatch priority lists where it was the single BPA holder. Pl. Resp. App. at 000250. Crewzers also argued that terminating the BPA for convenience gave the Forest Service the opportunity to get better prices for tents from the other contractors with BPAs, because they were not asserting their right to recover mileage charges. Pl. Resp. App. at 000252. The government allegedly tried to deprive Crewzers of mileage charges for tents with point of hire outside of the host dispatch zone. Pl. Resp. App. at 000253. Crewzers also argued that terminating the BPA for convenience prevented Crewzers from challenging the addition of § D.6.5.4 to the BPA, which restricts allowable mileage charges. Pl. Resp. App. at 000254. In addition, Crewzers argued that the CO terminated Crewzers' BPA for convenience to prevent Crewzers' further discovery of serious infractions committed by competitors of Crewzers. Pl. Resp. App. at 000254. Finally, Crewzers argued that the CO terminated Crewzers' BPA for convenience because of her animosity towards Crewzers. Pl. Resp. App. at 000255.

On December 7, 2011, the CO responded to Crewzers' letter by revoking the termination for convenience and replacing it with a termination for cause based on the reasons stated in her November 8, 2011 letter. Pl. Resp. App. at 000259.

## II.   PROCEDURAL HISTORY.

On February 1, 2012, Crewzers filed a Complaint against the United States ("the Government").

On February 3, 2012, Crewzers filed an Amended Complaint, claiming the following: (1) the CO's decision to use the same grounds to initially terminate the BPA for convenience and then terminate the BPA for cause was of no legal effect; (2) the CO and other Forest Service personnel acted in bad faith in terminating Crewzers' BPA with the Forest Service, both for

convenience and for cause; (3) the CO and other Forest Service personnel interfered with Crewzers' performance of the BPA with a specific intent to deprive Crewzers of its contractual rights under the BPA with the Forest Service; (4) the actions of the CO and other Forest Service personnel breached the covenant of good faith and fair dealing, which existed under the BPA between Crewzers and the Forest Service; (5) neither the CO's termination for convenience or her termination for cause were "honestly rendered" and therefore both decisions were arbitrary, capricious, or an abuse of discretion; and (6) Crewzers' deviations from the requirements of the BPA were not material and therefore did not give the Forest Service the right to discontinue Crewzers' performance under the BPA.  Am. Compl. ¶¶ 2-3.

Crewzers sought from the court a declaration in relation to each of these allegations, as well as a declaration that Crewzers was entitled to recover breach of contract damages, including expectation damages, for the remainder of the three-year term of the BPA, or alternatively, to reinstatement of the BPA, with contract damages for the period prior to reinstatement.  Am. Compl. ¶ 4.

On November 7, 2012, the Government filed a Motion To Dismiss under RCFC 12(b)(1) and 12(b)(6) ("Gov't Mot.").  On December 7, 2012, Crewzers filed a Response ("Pl. Resp.").  On January 11, 2013, the Government filed a Reply ("Gov't Reply").

## III.   THE PRIOR RELATED CASE IN THE UNITED STATES COURT OF FEDERAL CLAIMS.

In *Crewzers Fire Crew Transport, Inc. v. United States*, 98 Fed. Cl. 71, 76 (2011) ("*Crewzers I*"), the court considered a similar bid protest seeking: (1) a declaration that the BPA was "illusory and unenforceable, lack[ed] a reasonable basis, [was] unreasonable or irrational, and thus [was] arbitrary and capricious"; (2) a permanent injunction ordering the Forest Service to use BPAs that create binding contracts; and (3) a declaration that Crewzers was entitled to equitable relief and money damages.  *Id.*  Therein, the court determined the BPA was not a contract, because it was "merely a framework for future contracts and only create[d] a contractual obligation with regard to accepted orders."  *Id.* at 79 (citation omitted).  In addition, because the BPA failed to guarantee performance, the court held that the BPA "lack[ed] the mutual intent to form a binding contract."  *Id.* (internal quotation marks omitted).  As the court observed, "The plaintiff's entire protest is built on the faulty assumption that in order to withstand scrutiny under our standards of administrative review, the Forest Service's BPA must possess the qualities of a binding contract."  *Id.* at 84.  In the present case, Crewzers effectively takes the opposite position, arguing that the BPA is enforceable as a binding contract.

## IV.   DISCUSSION.

### A.   Jurisdiction.

The United States Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28

U.S.C. § 1491(a)(1) (2006). The Tucker Act, however, is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Testan*, 424 U.S. 392, 398 (1976)). Therefore, to satisfy the jurisdictional requirements of the Tucker Act, a plaintiff must identify and plead a constitutional provision, federal statute, independent contractual relationship, and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act itself."); *see also Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004) ("Because the Tucker Act itself does not provide a substantive cause of action . . . a plaintiff must find elsewhere a money-mandating source upon which to base a suit.").

If a plaintiff meets the jurisdictional requirements of the Tucker Act, the plaintiff also must demonstrate compliance with the mandatory requirements of the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601-13 (2006).[2] In order to have jurisdiction under the CDA, a plaintiff must have submitted a written and certified claim to the contracting officer and obtained a final decision by the Contracting Officer on the claim. *See M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (holding that CDA jurisdiction "requires both a valid claim and a contracting officer's final decision on that claim"). Although the CDA does not define the term "claim," the United States Court of Appeals for the Federal Circuit has stated that a "claim" is a "written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain[.]" *England v. The Swanson Grp., Inc.*, 353 F.3d 1375, 1379 (Fed. Cir. 2004) (quoting FAR § 2.201).

For claims over $100,000, Congress also requires that "the contractor . . . certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, that the amount requested accurately reflects the contract adjustment for which the contractor believes the [G]overnment is liable, and that the certifier is duly authorized to certify the claim on behalf of the contractor." 41 U.S.C. § 605(c)(1) (2006). In addition, for claims over $100,000, a failure to "issue a decision" or "notify the contractor of the time within which a decision will be issued" within sixty days of receipt of the claim is "deemed to be a decision by the [contracting officer] denying the claim." 41 U.S.C. § 605(c)(2), (5) (2006).

The United States Court of Federal Claims has subject matter jurisdiction over Crewzers' claims, if Crewzers and the Government entered into a contract. This issue is at the center of the Government's November 7, 2012 Motion To Dismiss and is addressed below.

---

[2] As of January 4, 2011, Congress amended certain provisions of the CDA, and recodified the Act, as amended, at 41 U.S.C. §§ 7101-7109. *See* Public Contracts Act of Jan. 4, 2011, Pub. L. No. 111-350, § 3, 124 Stat. 3677, 3816-26. Although the Public Contracts Act repealed 41 U.S.C. §§ 601-13, any "rights and duties that matured, penalties that were incurred, and proceedings that were begun before the date of enactment of [the 2011] Act" are still governed by these sections of the United States Code. Pub. L. No. 111-350, § 7(b), 124 Stat. at 3855.

**B.      Standard For Decision On Motion To Dismiss Pursuant To RCFC 12(b)(1) And RCFC 12(b)(6).**

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion." *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction[.]"). "[I]n deciding the Government's motion to dismiss plaintiff[']s complaint, the court [is] obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). Nonetheless, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

A challenge to the United States Court of Federal Claims' "[ability] to exercise its general power with regard to the facts peculiar to the specific claim . . . is raised by a [Rule] 12(b)(6) motion[.]" *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(6) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted[.]").  When considering whether to dismiss an action for failure to state a claim, the court must assess whether the complaint states "allegations plausibly suggesting (not merely consistent with)" behavior by defendant that, if proven, would entitle the plaintiff to judicial relief.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  The factual allegations must be substantial enough "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]"  *Id.* at 555 (internal citations omitted).

**C.      Issue Raised By The Government's November 7, 2012 Motion To Dismiss.**

**1.      Whether A Contract Was Formed.**

**a.      The Government's Argument.**

The Government's principal argument is that the United States Court of Federal Claims does not have subject matter jurisdiction to adjudicate Crewzers' claims, because the BPA is not a contract.  Gov't Mot. at 6, 8.  In *Crewzers I*, the United States Court of Federal Claims ruled that a similar BPA, involving fire crew transport buses, was not a contract, because it "lack[ed] mutual intent to form a binding contract" and did not place any obligations upon Crewzers or the Government.  Gov't Mot. at 8 (citing *Crewzers I*, 98 Fed. Cl. at 79-80 (citation omitted)).  That logic is instructive here, as well.  For example, the Government did not have a contractual obligation to Crewzers, because the BPA states, "[T]he placement of orders IS NOT GUARANTEED."  Gov't Mot. at 8; Pl. Resp. App. at 000066 (BPA § B) (emphasis in original). Similarly, "Crewzers was 'under no obligation to honor [or accept] an [o]rder,'" because a contractor only was required to furnish the flame resistant tents "to the extent the [c]ontractor is

willing and able at the time of order." Gov't Mot. at 8 (quoting Am. Compl. ¶ 14). Crewzers' argument that sets of conditional promises can form a contract is inapposite, as Crewzers relies on cases involving at-will employment contracts that do not change the fact that "[t]he BPA itself placed no obligations upon either the Forest Service or Crewzers." Gov't Reply at 2-3. In these circumstances, a contract is only formed when an individual order is made by the Forest Service and accepted by the contractor, as the "Government is liable only for those orders placed, and the contractor is obligated only to the extent that it accepts individual orders." Gov't Mot. at 8; Gov't Reply at 3. Consistent with the decision of the United States Court of Federal Claims in *Crewzers I*, however, precedent from this court and the United States Court of Appeals for the Federal Circuit supports the proposition that BPAs and other similar non-binding agreements do not themselves confer jurisdiction on this court. Gov't Mot. at 10-11.

In addition, while Crewzers makes much of the fact that the FAR does not explicitly state that BPAs are not contracts (Pl. Resp. at 24-27), the FAR does not refer to BPAs as contracts, instead using the term "agreements," the same term it uses to refer to basic ordering agreements and other non-binding, tentative agreements. Gov't Reply at 4 (citing 48 C.F.R. § 13.303; 48 C.F.R. pt. 16, 16.7). Moreover, the FAR "expressly limits the Government's obligation to purchases actually made pursuant to the BPA." Gov't Reply at 4 (citing 48 C.F.R. § 13.303-3(a)(2)). Likewise, the FAR provides that a "quotation" is "not an offer that can be accepted by the Government," and that a contract only arises when the Government places an order that is accepted by Crewzers. Gov't Reply at 4-5 (citing 48 C.F.R. § 13.004(a)).

In addition, each of Crewzers' remaining claims is dependent on an underlying contractual relationship that does not exist. Gov't Mot. at 11. With respect to Crewzers' claims for breach of the duty of good faith and fair dealing (Am. Compl. ¶¶ 48, 52, 54), the Government acknowledges that the United States Court of Federal Claims would have jurisdiction to adjudicate these counts in the context of the termination of a contract. Gov't Mot. at 11-12. But, because the BPA does not establish a contract between Crewzers and the Forest Service, Crewzers cannot recover in the United States Court of Federal Claims for breach of the covenant of good faith and fair dealing, an "implied contract term that does not exist in the absence of a contract." Gov't Mot. at 12 (emphasis omitted).

Likewise, Crewzers' claim that the CO and the Forest Service "acted with a specific intent to deprive Crewzers of its contractual rights when the Forest Service denied Crewzers proper mileage payments pursuant to the BPA" (Am. Compl. ¶ 50) must be dismissed. Gov't Mot. at 12. Even to the extent that Crewzers' claim relates to an order placed and accepted pursuant to the BPA, Crewzers' claim was never presented to a contracting officer for a final decision, a jurisdictional requirement for disputes involving contracts subject to the CDA, under 41 U.S.C. § 7104. Gov't Mot. at 12 (citing *M. Maropakis Carpentry*, 609 F.3d at 1327-28 (holding that jurisdiction "requires both a valid claim and a contracting officer's final decision on that claim")); *see also* 41 U.S.C. § 7104(b)(1) (describing a contractor's right to bring an action in the United States Court of Federal Claims in response to "the decision of a contracting officer"). Crewzers has not made an unequivocal, written demand on the CO for payment of a sum certain relating to a contract and instead simply asks the CO to revoke the termination for convenience and appoint a new contracting officer. Gov't Mot. at 12-13.

In addition, Crewzers' claim that its failure to comply with the terms of the BPA is excused because the Forest Service breached the BPA (Am. Comp. ¶ 56) is a breach of contract claim or a claim relating to a breach of the duty of good faith and fair dealing, both of which require the existence of a contract in the first instance.  Gov't Mot. at 13.

Assuming *arguendo* that the court has jurisdiction to adjudicate the claims alleged in the February 1, 2012 Complaint, the court still does not have jurisdiction to grant at least one form of Crewzers' requested relief, *i.e.*, reinstatement of the BPA.  Gov't Mot. at 14.  Except in limited circumstances falling within the court's bid protest jurisdiction, as provided for in 28 U.S.C. § 1491(b)(2), the court cannot grant equitable relief nor award specific performance. Gov't Mot. at 14.  In addition, even if the court were to determine that the CO's termination for cause was improper, the prescribed remedy is not reinstatement, but conversion of the termination for cause into a termination for convenience.  Gov't Reply at 8 (citing 48 C.F.R § 52.212-4(m)).  The *de novo* standard of review does not empower the court to step into the contracting officer's shoes to reinstate the BPA, but only to review the contracting officer's findings of fact.  Gov't Reply at 7-8.

### b.    The Plaintiff's Response.

Crewzers responds that a contract was formed in this case through the BPA, the DPLs, and the resource orders based on those DPLs, which Crewzers asserts together constitute sets of promises.  Pl. Resp. at 19 (citing RESTATEMENT (SECOND) OF CONTRACTS § 1).  Crewzers contends that a contract can be formed by the exchange of conditional promises, as evidenced by enforceable at-will employment contracts, and it does not matter that private-party lessors of tents could decline to accept a resource order.  Pl. Resp. at 21-22.  In sum, in this case, a contract exists, because: (1) the Forest Service must use the DPLs to order tents from private-party contractors; and (2) Crewzers must comply with the performance and other requirements of the BPA for each order it accepts.  Pl. Resp. at 22-24.  These promises between the Forest Service and Crewzers provided the bargained-for exchange necessary to establish a contract under the Tucker Act.  Pl. Resp. at 23.

In addition, Crewzers responds to the Government's cited precedent and regulations on various grounds.  First, several of the Government's cited cases relied on precedent involving basic ordering agreements, not BPAs.  Pl. Resp. at 25.  BPAs, unlike basic ordering agreements, are separately covered in FAR 13.303, not FAR subpart 16.7.  Pl. Resp. at 25-26.  The FAR does not expressly state that a BPA is not a contract, as it does for basic ordering agreements; instead, FAR 13.303 only limits the extent to which money damages are available—to authorized purchases actually made.  Pl. Resp. at 26-27 (citing FAR 13.303-3(a)(2)).  Therefore, although this FAR section implies that the BPA, in contrast to the actual orders made under it, cannot alone provide the basis for a money judgment, this does not mean that the BPA cannot at the same time be a contract for the purpose of the CDA, nor does it limit the availability of equitable remedies.  Pl. Resp. at 28-29.  This is consistent with the fact that other United States Court of Federal Claims precedent has held that instruments, including basic ordering agreements, are enforceable contracts based on sets of promises related in subject matter and performance.  Pl. Resp. at 30-31 (citing *Western Pioneer, Inc. v. United States*, 8 Cl. Ct. 291, 297 (1985) (holding

that a basic ordering agreement nonetheless was performed under circumstances which imposed "sufficient contractual overtones to qualify as a 'contract[.]'")).

Finally, Crewzers argues that the court has jurisdiction to order reinstatement of Crewzers to the DPLs and reinstatement of Crewzers' BPA. Pl. Resp. at 34-39. In response to the Government's argument that Crewzers has not presented its claims to the contracting officer for a final decision, pursuant to 41 U.S.C. § 7103(a)(1), (b)(1), Crewzers counters that the Government's cited precedent cannot logically stand for the proposition that noncompliance with explicit CDA requirements means that "Contractors are defenseless and that they can assert nothing in response to a Government Claim absent first submitting even nonmonetary defenses as Claims to the same Contracting Officer who earlier asserted a Government Claim against that Contractor." Pl. Resp. at 34-36. The fact that this case is a *de novo* proceeding means that "when this [case] was filed, this [c]ourt succeeded to the authority given to the [Forest Service] Contracting Officer [under the Disputes Clause of the contract.]" Pl. Resp. at 37. The CO could have properly reinstated Crewzers to the DPLs, and now the court has the authority to do so. Pl. Resp. at 37-38.

### c.    The Court's Resolution.

It is a settled matter of law that to invoke jurisdiction under the Tucker Act or the CDA, a plaintiff must allege all the requisite elements of a contract with the United States. *See Harbert/Lummus Agrifuels Projects v. United States*, 142 F.3d 1429, 1434 (Fed. Cir. 1998); *accord Peninsula Group Capital Corp. v. United States*, 93 Fed. Cl. 720, 731 (2010) (indicating that an implied-in-fact contract "requires the existence of the same elements as an express contract"). The requisite elements include "a mutual intent to contract including an offer, an acceptance, consideration, and facts sufficient to establish that the contract was entered into with an authorized agent of the United States who had 'actual authority to bind the United States.'" *Gonzalez-McCaulley Inv. Grp., Inc. v. United States*, 93 Fed. Cl. 710, 714 (2010) (quoting *Lion Raisins, Inc. v. United States*, 54 Fed. Cl. 427, 431 (2002)).

The issue before the court is whether the April 11, 2011 BPA creates a contractual relationship between Crewzers and the Forest Service.

The United States Court of Appeals for the Federal Circuit's precedent supports a finding that a BPA is not an enforceable contract. *See Ridge Runner Forestry v. Veneman*, 287 F.3d 1058 (Fed. Cir. 2002); *see also Ace-Fed. Reporters, Inc. v. Barram*, 226 F.3d 1329 (Fed. Cir. 2000). In *Ridge Runner*, the plaintiff was a fire protection company that entered into a tender agreement with the Forest Service to provide equipment and trained staff. 287 F.3d at 1060. The agreement stated, "Award of an Interagency Equipment Rental Agreement does not guarantee there will be a need for the equipment offered nor does it guarantee orders will be placed against the awarded agreements." *Id.* at 1060 (citation omitted). The agreement also stated, "Because the equipment needs of the government and availability of contractor's equipment during an emergency cannot be determined in advance, it is mutually agreed that, upon request of the government, the contractor shall furnish the equipment offered herein *to the extent the contractor is willing and able at the time of the order*." *Id.* (citation omitted). This agreement is nearly identical to the BPA in this case, which states that "the Contractor shall

furnish the resources listed herein to the extent the Contractor is willing and able at the time of order." Pl. Resp. App. at 000070 (BPA § C.3.1).

Ridge Runner "presented a claim for $180,000 to a contracting officer alleging that the Forest[] Service violated an 'implied duty of good faith and fair dealing,' because Ridge Runner was 'systematically excluded for the past several years from providing services to the Government.'" 287 F.3d at 1060. The Department of Agriculture Board of Contract Appeals granted the Government's motion to dismiss, because no contract was entered into and therefore the Board lacked jurisdiction. *Id.* at 1061. On appeal, the United States Court of Appeals for the Federal Circuit held the agreement at issue created two illusory promises. *Id.* at 1062. First, "[t]he government had the option of obtaining services from Ridge Runner or any other source, regardless of whether that source had signed a tender agreement." *Id.* at 1061-62. Second, "[i]f the government came calling, Ridge Runner 'promised' to provide the requested equipment only if it was 'willing and able.'" *Id.* at 1062. The fact that *Ridge Runner* did not involve a formal BPA is irrelevant, since that decision rested on the lack of mutual consideration, not the legal import of the specific type of agreement. In sum, our appellate court has instructed that

> To be valid and enforceable, a contract must have both consideration to ensure mutuality of obligation . . . and sufficient definiteness so as to "provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Ace–Federal Reporters, Inc. v. Barram*, 226 F.3d 1329, 1332 (Fed. Cir. 2000) (internal citations omitted). "To constitute consideration, a performance or a return promise must be bargained for." RESTATEMENT (SECOND) OF CONTRACTS § 71(1) (1979). And the "promise or apparent promise is not consideration if by its terms the promisor or purported promisor reserves a choice of alternative performances[.]" *Id.* § 77.

*Ridge Runner*, 287 F.3d at 1061.

In *Ace-Federal Reporters*, ten contractors were awarded agreements in response to a United States General Services Administration request for proposals. 226 F.3d at 1330-31. The awarded contractors agreed to supply comparable items with varying prices at the Government's request. *Id.* at 1330. The contractors received the advantage of only having to compete with one to four contractors who were also on the schedule. *Id.* at 1332. Six of the contractors filed a claim with a contracting officer alleging breach of their contracts because of unauthorized off-schedule purchases. *Id.* at 1331. The contracting officer declined to take action, which resulted in an appeal to the General Services Administration Board of Contract Appeals. *Id.* The Board determined a contract did not exist, because the contractors were not guaranteed any business. *Id.* Following this appeal, the United States Court of Appeals for the Federal Circuit held that a contract did exist. *Id.* The appellate court reasoned, "[A]s consideration for the contractors' promises regarding price, availability, delivery, and quantity, the government promised that it would purchase only from the contractors on the schedule, with few exceptions." *Id.* at 1332.

Here, the relationship between Crewzers and the Forest Service is different than that between the contractors and the Government in *Ace-Federal Reporters*. The contractors in *Ace-Federal Reporters* promised the Government price, availability, delivery, and quantity, akin to a

requirements contract.  226 F.3d at 1332.  In contrast, Crewzers only promised the Forest Service that tents would be available at a particular price, but made no promises as to their availability.

The United States Court of Federal Claims also has determined that a BPA typically does not manifest the necessary mutuality of consideration required for an enforceable contract, and instead is "merely a framework for future contracts [that] only creates a contractual obligation with regard to accepted orders."  *Crewzers I*, 98 Fed. Cl. at 79 (quoting *Zhengxing v. United States*, 204 F. App'x 885, 886-87 (Fed. Cir. 2006)).  Put another way, "[f]uture terms are spelled out, but performance is not guaranteed."  *Crewzers I*, 98 Fed. Cl. at 79.

In addition, the FAR provides relevant guidance on the treatment of BPAs.  FAR 13.303-3(a)(2) requires a statement that expressly limits the Government's obligation under a BPA "only to the extent of authorized purchases actually made under the BPA."  48 C.F.R. § 13.303-3(a)(2).  FAR 13.303-3(a)(1) further requires a "statement that the supplier shall furnish supplies or services, described in general terms, *if and when requested* by the contracting officer . . . during a specified period and within a stipulated aggregate amount, *if any*."  48 C.F.R. § 13.303-3(a)(1) (emphasis added).  In *Crewzers I*, the court found that the FAR's provision of these mandatory terms and conditions "make[s] it abundantly clear that the BPA carries no guarantee of performance."  98 Fed. Cl. at 79.  In addition, FAR 13.004 states that:

> issuance by the Government of an order in response to a supplier's quotation does not establish a contract.  The order is an offer by the Government to the supplier to buy certain supplies or services upon specified terms and conditions.  A contract is established when the supplier accepts the offer.

48 C.F.R. § 13.004.  In this case, the BPA contains Crewzers' quotation and the qualification that the Forest Service may place orders with Crewzers, upon need.  While Crewzers is correct that the FAR does not explicitly deny that a BPA is a contract, the aforementioned FAR provisions read together support a finding that a contract is not formed between a contractor and the Government until two conditions are met: an order must be placed under the BPA; and the contractor must accept that order.

The Amended Complaint failed to allege the mutuality of obligations necessary to form a binding contract, because even if and to the extent that the Forest Service promised to follow the DPL, in the event of an order (Pl. Resp. App. at 000066, 000074 (BPA §§ B, D.6.3.1)), Crewzers did not make a binding promise to the Forest Service.  In addition, the BPA states that, "[f]ollowing Agreement award, each host dispatch center will have an established dispatch priority list showing the resources located within their Host Dispatch Zone.  The Government intends to dispatch contractor resources based on this priority ranking for other than initial attack."  Pl. Resp. App. at 000074 (BPA § D.6.3.1).  In other words, in the event of an incident, the Forest Service intended to follow the DPL, if it decided to order tents from private-party lessors.  Pl. Resp. App. at 000074 (BPA § D.6.3.1).  The BPA also states, however, that "due to the sporadic occurrence of Incident activity, the placement of any orders IS NOT GUARANTEED."  Pl. Resp. App. at 000066 (BPA § B).  While *Crewzers* argues that the conditional nature of this promise is irrelevant (Pl. Resp. at 21-22), the Forest Service's

obligation to follow the DPLs appears to come into play only when a contract is formed by the placement and acceptance of an individual order.

Regardless of whether this conditional promise is sufficient, as Crewzers insists, the court has determined that Crewzers made no binding promises to the Government.  The BPA states, "[T]he Contractor shall furnish the resources listed herein *to the extent the Contractor is willing and able at the time of order*."  Pl. Resp. App. at 000070 (BPA § C.3.1) (emphasis added).  This language is identical to that in the *Ridge Runner* agreement, where the United States Court of Appeals for the Federal Circuit held that the promises were illusory and the agreement unenforceable.  The BPA also states, "If the Contractor cannot be reached or is not able to meet the time and date needed, the dispatcher may proceed with contacting the next resource on the dispatch priority list."  Pl. Resp. App. at 000074 (BPA § D.6.5.1).  This sentence again emphasizes Crewzers' flexibility under the BPA.  In other words, the BPA effectively states that Crewzers will accept an order only if it wishes to–a classic illusory promise.  *See Ridge Runner*, 287 F.3d at 271 ("[An illusory promise consists of] words in promissory form that promise nothing; they do not purport to put any limitation on the freedom of the alleged promisor, but leave his future action subject to his own future will, just as it would have been had he said no words at all" (quoting *Torncello v. United States*, 681 F.2d 756, 769 (Ct. Cl. 1982))).  A promise that a contractor will perform only when the contractor is "willing and able" to do so is "a route of complete escape [that] vitiates any other consideration furnished and is incompatible with the existence of a contract."  *Torncello*, 681 F.2d at 769.  Therefore, Crewzers' BPA did not itself establish a contract with the Forest Service.

## V.    CONCLUSION.

For these reasons, the Government's November 7, 2012 Motion To Dismiss is granted. The Clerk is directed to dismiss the February 3, 2012 Amended Complaint.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**